UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

Essex Insurance Company,
4521 Highwoods Parkway
Glen Allen, VA  23060-6148

       Plaintiff,

v.

                                         CIVIL ACTION NO.

MDRB Corp. t/a Ramada Limited Corp.,
14612 Stratfield Circle
Laurel, MD 20707
(Prince Georges County) and

Amina Farooq, as personal representative of
Estate of Nadir Farooq
328 16th Street, SE
Washington, D.C. 20003

       Defendants.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Essex Insurance Company ("Essex"), for its Complaint against the Defendants named above, alleges as follows:

1.      This is an action by Essex for a declaratory judgment regarding its rights and obligations under Commercial General Liability Policy No. 3CH1121 issued to MDRB Corp. T/A Ramada Limited Corp. ("Ramada") for the policy period July 10, 2002 to July 10, 2003 (the "Policy").

2.      Essex seeks a declaration from this Court that the Policy does not provide coverage to Ramada in regard to the claims made against it in the underlying wrongful death lawsuit captioned *Farooq v. MDRB Corporation, et al.* (D.C. Superior Court Case No. 2005 CA 003395) (the "Farooq Action"). A true and correct copy of the complaint filed in the *Farooq*

329356 v 1

Action is attached as Exhibit A (the "*Farooq* Complaint").

## PARTIES

3.      Plaintiff Essex is a corporation organized under the laws of Delaware with its

principal place of business in Glen Allen, Virginia.

4.      On information and belief, Defendant Ramada is a privately-held close

corporation incorporated under the laws of Maryland with its principal place of business in

Laurel, Maryland.  At all times relevant to this dispute, Ramada owned and operated the Ramada

Inn hotel located at 1600 New York Avenue, N.W., Washington, D.C. that is the subject of the

*Farooq* Complaint.

5.      On information and belief, Amina Farooq is the personal representative of the

Estate of Nadir Farooq.  The Estate of Nadir Farooq is a resident of Washington, D.C.

## JURISDICTION AND VENUE

6.      This is an action by Essex pursuant to 28 U.S.C. §§ 2201 and 2202 for a

declaratory judgment regarding its rights and obligations under a policy of insurance issued to

Ramada.  There is complete diversity of citizenship between Plaintiff and Defendants, and the

amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.  An actual

controversy exists within the meaning of 28 U.S.C. § 2201.

7.      Venue is proper pursuant to U.S.C. § 1391 because Defendant is incorporated and

existing under the laws of Maryland and has its principle place of business in Maryland.  All

aspects of MDRB's business, including its management, is conducted from Maryland.

- 2 -

329356 v 1

## FACTUAL ALLEGATIONS

### The Policy

8.      Essex issued the Policy to Ramada for the policy period July 10, 2002 to July 10,

2003. A true and correct copy of the Policy is attached as Exhibit B.

9.      Subject to all of its terms, conditions and limitations, the Policy provides coverage

for bodily injury caused by an occurrence that takes place during the policy period.  The Policy

affords coverage of $1 million per occurrence and a $2 million aggregate limit of liability.

### The Murder of Farooq

10.     According to the complaint filed in the *Farooq* Action, on or around September

27, 2005, a dance was held at Ramada. *See Farooq* Complaint ¶ 8.

11.     At approximately 10:00 p.m., Farooq arrived at the dance at Ramada and

subsequently "was attacked and stabbed in the neck with a knife by another patron," which

resulted in Farooq's death several days later. *See id.* ¶¶ 8-10.

12.     According to eyewitnesses interviewed by the District of Columbia Metropolitan

Police Department, Travis Littlejohn and Farooq had a verbal dispute, and during the course of

the dispute, Farooq, who was unarmed, was stabbed in the neck by Littlejohn using a folding

knife.

13.     Farooq's jugular vein and carotid artery were severed by Littlejohn.  As a result of

these injuries, Farooq suffered a life-threatening loss of blood, lost consciousness and

experienced organ failure.

14.     Immediately after stabbing Farooq, Littlejohn attempted to leave the dance, but

security personnel detained him.  Littlejohn thereafter was arrested by an officer of the District of

Columbia Metropolitan Police Department.

329356 v 1

15.    According to the District of Columbia Metropolitan Police Department, one security person and several other eyewitnesses identified Littlejohn as the person who stabbed Farooq.

16.    On September 28, 2002, the United States government charged Littlejohn with Assault With Intent to Murder While Armed, in violation of 22 D.C. Code §§ 403, 2103 and 4502.  In particular, the criminal complaint against Littlejohn asserted that "[o]n or about September 28, 2002, within the District of Columbia, Travis Littlejohn, while armed with a knife, assaulted Nadir Farooq with intent to murder him." *See* First Littlejohn Criminal Complaint in *U.S.A. v. Littlejohn* (D.C. Super. Ct. Case No. F-6291-02)  (attached as Exhibit C).

17.    After Farooq died from his stab wounds on October 7, 2002, an autopsy was performed by the Office of Chief Medical Examiner for the District of Columbia, which determined that the cause of death was a stab wound to the neck and ruled that homicide was the manner of death.

18.    October 16, 2002, the United States government charged Littlejohn with Second Degree Murder While Armed, in violation of 22 D.C. Code §§ 2103 and 4502.  The criminal complaint against Littlejohn asserted that "Travis Littlejohn, within the District of Columbia, while armed with a knife, and with the intent to kill another and to inflict serious bodily injury on another and with conscious disregard of an extreme risk of death or serious bodily injury to another, caused the death of Nadir Farooq by stabbing him with [a] knife on or about September 28, 2002, thereby causing injuries from which Nadir Farooq died on or about October 7, 2002." *See* Second Littlejohn Criminal Complaint in *U.S.A. v. Littlejohn* (D.C. Super. Ct. Case No. F-6669-02) (attached as Exhibit D).

19.    After a trial lasting several days, on November 15, 2004, a District of Columbia

329356 v 1

jury found Littlejohn guilty of Voluntary Manslaughter While Armed, which is a lesser-included

offense of Second Degree Murder While Armed. *See* Verdict Form, dated November 15, 2004,

in *U.S.A. v. Littlejohn* (D.C. Super. Ct. Case No. F-6669-02) (attached as Exhibit E).

20.     On March 4, 2005, Littlejohn was sentenced to 15 years in prison for his

conviction for Voluntary Manslaughter While Armed. See Criminal Judgment in *U.S.A. v.*

*Littlejohn* (D.C. Super. Ct. Case No. F-6669-02) (attached as Exhibit F).

## The Farooq Action

21.     On September 28, 2005, Amina Farooq, as personal representative for the Estate

of Nadir Farooq, filed a wrongful death action against Ramada and two "Doe" Defendants –

"John Doe d/b/a T.C.B. (Taking Care of Business), Event Sponsor" and "Richard Doe

(Security)".

22.     The complaint in the *Farooq* Action alleges that Ramada knew or should have

known that "many young persons in high crime communities[, such as where the Ramada

purportedly is located,] carry concealed weapons." *See* Farooq Complaint ¶ 11 (Ex. A).

23.     The complaint in the *Farooq* Action also alleges that Ramada failed to "have

adequately trained or competent security personnel on the duty to protect [Farooq] from attack

by third persons." *See* Farooq Complaint ¶ 13 (Ex. A).

24.     As result of Ramada's acts and omissions, according to the *Farooq* Complaint,

Farooq "was violently attacked and stabbed by [a] patron with [a] knife while on [the] dance

floor" which caused him to "suffer physical pain, mental anguish, loss of body functions,

hospitalizations, medicine as well as the expense of his last illness, death and burial." *See*

*Farooq* Complaint ¶¶ 15-16.

25.     The *Farooq* Complaint also asserts claims against the two "Doe" Defendants as a

329356 v.1

result of their alleged failure to prevent violence at the dance and to adequately search persons

attending the dance for concealed weapons. *See Farooq* Complaint ¶¶ 17-29.

26.     As a result of the "Doe" Defendants' acts and omissions, according to the Farooq

Complaint, Farooq was stabbed while attending the dance. *See Farooq* Complaint ¶¶ 24, 29.

27.     The *Farooq* Complaint seeks $10 million for compensatory damages and $10

million for punitive damages.

## CONTROVERSY AND RIPENESS

28.     There is an actual, ripe and live controversy between the parties regarding their

respective rights and obligations under the Policy in connection with the *Farooq* Action.

## COUNT I

### Essex is Entitled to Declaratory Relief
### Based on the Assault and Battery Exclusions

29.     Essex repeats and incorporates by reference the allegations in Paragraphs 1

through 28 of this Complaint.

30.     The Policy provides that

> [t]he coverage under this policy does not apply to any claim, suit, cost or
> expense arising out of assault and/or battery, or out of any act or omission
> in connection with the prevention or suppression of such acts, whether
> caused by or at the instigation or direction of any Insured, Insured's
> employees, patrons or any other person.

*See* Assault and/or Battery Exclusion Endorsement (the "First Assault and Battery Exclusion").

31.     The Policy also provides that "[t]he coverage under this policy does not apply to

'bodily injury,' . . . or any injury, loss or damage arising out of . . .

> 4.   Assault and/or Battery, or out of any omission in connection with the
>      prevention or suppression of such acts whether caused by or at the
>      instigation or direction of any insured, insured's employees, patrons or
>      another person."

-6-

Case 8:06-cv-0032  KC    Document 1-1    Filed 02/08  06    Page 7 of 11

*See* Restaurant, Bar, Tavern, Night Clubs, Fraternal and Social Clubs Endorsement § 4 (the "Second Assault and Battery Exclusion").

32.    Similarly, the Policy provides that "[t]he coverage under this policy does not apply to 'bodily injury,' . . . or any injury, loss or damage arising . . .

> 3.    Out of allegations of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's Employees, patrons or any other person. . . . Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property.

*See* Habitational Endorsement § 3 (the "Third Assault and Battery Exclusion").

33.    As set forth above, on its face, the *Farooq* Complaint – and the criminal complaints against Littlejohn – allege that Littlejohn committed assault and battery when he intentionally stabbed Farooq with a knife, which resulted in Farooq's death. Moreover, Littlejohn was convicted of Voluntary Manslaughter While Armed, which is a crime that requires a finding that Littlejohn acted intentionally.

34.    Because the wrongful acts complained of in the *Farooq* Action all stem from Littlejohn's intentional stabbing of Farooq, the damages for bodily injury sought in the *Farooq* Action necessarily "aris[e] out of assault and/or battery."

35.    Consequently, Essex is entitled to a declaration that the Policy provides no coverage for the claims asserted in the *Farooq* Action.

### COUNT II

### Essex is Entitled to Declaratory Relief
### Based on the Negligent Hiring, Training and Supervision Exclusions

36.    Essex repeats and incorporates by reference the allegations in Paragraphs 1 through 35 of this Complaint.

-7-

329356 v 1

37.    The Policy provides that "[t]he coverage under this policy does not apply to

'bodily injury,' . . . or any injury, loss or damage arising out of . . .

> 6.    Any charges or allegations of negligent hiring, employment, training, placement or supervision, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same covered in this policy.

*See* Restaurant, Bar, Tavern, Night Clubs, Fraternal and Social Clubs Endorsement § 6 (the

"First Negligent Hiring, Training and Supervision Exclusion").

38.    Similarly, the Policy also provides that "[n]or does this insurance apply with

respect to any charges or allegations of negligent hiring, training, placement or supervision." *See*

Habitational Endorsement § 3 (the "Second Negligent Hiring, Training and Supervision

Exclusion").

39.    The *Farooq* Complaint alleges that Ramada failed to properly train and supervise

security personnel present at the dance.

40.    Because the wrongful acts complained of in the *Farooq* Complaint allegedly stem

from Ramada's alleged "negligent hiring, employment, training, placement and supervision" of

security personnel, Essex is entitled to a declaration that the Policy provides no coverage for the

claims asserted in the *Farooq* Action.

## COUNT III

### Essex is Entitled to Declaratory Relief
### Based on the Liquor Liability Exclusion

41.    Essex repeats and incorporates by reference the allegations in Paragraphs 1

through 40 of this Complaint.

42.    The Policy provides that "[t]he coverage under this policy does not apply to

'bodily injury' . . . or any injury, loss or damage arising out of:

329356 v 1

a.) Causing or contributing to the intoxication of any person; and/or

b.) Furnishing alcoholic beverages to anyone under legal drinking age or under the influence of alcohol; and/or

c.) Any statute, ordinance or regulation relating to sales, gift, distribution or use of alcoholic beverages; and/or

d.) Any act or omission by any insured, any employee of any insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol[.]

*See* Restaurant, Bar, Tavern, Night Clubs, Fraternal and Social Clubs Endorsement § 6 (the

"Liquor Liability Exclusion").

43.     The *Farooq* Complaint asserts that the "sale to and consumption . . . of alcoholic

beverages" contributed to the death of Farooq. *See Farooq* Complaint ¶¶ 11, 15-17.

44.     Because the wrongful acts complained of in the *Farooq* Complaint allegedly stem

from the alleged provision of alcohol to persons attending the dance held at the Ramada, Essex is

entitled to a declaration that the Policy provides no coverage for the claims asserted in the

*Farooq* Action.

## COUNT IV

### Essex is Entitled to Declaratory Relief
### Based on the Punitive Damages Exclusion

45.     Essex repeats and incorporates by reference the allegations in Paragraphs 1

through 44 of this Complaint.

46.     The Policy provides that "[p]unitive or [e]xemplary damages [are] not covered

under this policy nor are any expenses nor any obligation to share damages with or repay anyone

else who must pay punitive damages from same." See Policy, Combination General

- 9 -

Endorsement § 6.

47.     Because the Farooq Action seeks $10 million in punitive damages, Essex is entitled to a declaration that the Policy provides no coverage for the punitive damages relief sought in the *Farooq* Action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Essex requests that the Court enter a judgment in its favor as follows:

A.     On Count I, a judicial declaration that coverage for the *Farooq* Action is barred as a result of the Policy's First, Second and Third Assault and Battery Exclusions;

B.     On Count II, a judicial declaration that coverage for the *Farooq* Action is barred as a result of the Policy's First and Second Negligent Hiring and Supervision Exclusions;

C.     On Count III, a judicial declaration that coverage for the *Farooq* Action is barred as a result of the Policy's Liquor Liability Exclusion;

D.     On Count IV, a judicial declaration that coverage for punitive damages sought in the *Farooq* Action are barred as a result of the Policy's Punitive Damages Exclusion;

E.     Awarding Essex its attorneys' fees and costs, as appropriate; and

F.     Awarding Essex such additional declaratory and other relief as shall be found to be appropriate under the circumstances.

329356 v 1

Dated:  February 7, 2006

By: ___/s/   Sean M. Hanifin___
Sean M. Hanifin, D. Md. Bar No. 24274
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C.  20006-1040
Telephone: (202) 662-2000
Facsimile: (202) 662-2190

*Attorneys for Plaintiff*
*Essex Insurance Company*

**Of Counsel:**
Benjamin C. Eggert
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C. 20006-1040

329356 v 1