UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Essex Insurance Company, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 1:06-cv-01086-HHK |
| MDRB Corp. t/a Ramada Limited Corp., et al. | NEXT SCHEDULED COURT EVENT: |
| Defendants. | Scheduling Conference on<br>June 8, 2007 at 10:00 a.m. |

**ESSEX INSURANCE COMPANY'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

On September 27, 2002, Travis Littlejohn stabbed Nadir Farooq while on the premises of the Ramada Hotel. Farooq died from his injuries. Ramada tendered to Essex Insurance Company ("Essex") the resulting wrongful death claim brought by Farooq's estate. There is no coverage for that claim under the Essex policy, which expressly excludes coverage for claims that arise out of an assault and/or battery or any failure to prevent an assault and/or battery.

Ramada's claim that the stabbing is covered must fail because:

(1)     in three separate provisions, the policy expressly bars coverage for any claims arising out of an assault and/or battery, including any claim that Ramada failed to prevent an assault and/or battery (*see* Exhibit A);[1]

(2)     in three separate provisions, the policy bars coverage for claims that Ramada negligently failed to hire and supervise personnel who might have prevented the stabbing (*see* Exhibit A); and

(3)     the policy and applicable law bar coverage for punitive damages (*see* Exhibit B).

---

[1] Exhibits A and B to Essex's Memorandum in Support of its Motion for Summary Judgment contain the pages from the Essex policy that include the policy provisions relevant to Essex's motion for summary judgment. A full copy of the Essex policy is attached as Exhibit 8 to the Declaration of Benjamin C. Eggert that has been filed contemporaneously with this Memorandum.

There are no material facts in dispute, and Essex is entitled, as a matter of law, to a declaration

that it has no duty to defend or to indemnify for the underlying lawsuit against Defendant MDRB

Corp. t/a Ramada Limited Corp. ("Ramada").  Essex is entitled to summary judgment on all

counts asserted in its Declaratory Judgment Complaint.

I.      **BACKGROUND**[2]

      A.      **Littlejohn Stabbed And Killed Farooq At The Ramada Hotel**

On or around September 27, 2002, a dance was held at a ballroom at the Ramada hotel.

*See* Statement of Facts ¶ 1.  At 10:00 p.m., Farooq arrived at the dance, which was attended by

numerous other people, including Littlejohn.  *Id.* ¶ 2.  At some point after midnight, Farooq and

Littlejohn had a verbal dispute.  *Id.* ¶ 3.  During the course of the dispute, Littlejohn assaulted

and stabbed Farooq in the neck with a knife.  *Id.* ¶ 4. In findings of fact reached by the D.C.

Superior Court in the criminal proceedings against Littlejohn, the stabbing was described as

follows:

> [O]n September 28, 2002, [Littlejohn] approached [Farooq] after [Farooq] had a
> verbal altercation with an associate of [Littlejohn's] at a "go-go" at the Ramada
> Inn, located at 1600 New York Avenue, N.E. ***Without provocation from
> [Farooq], who was unarmed, [Littlejohn] made a stabbing or swinging motion
> at [Farooq's] neck, and made contact with [Farooq's] neck.  Immediately
> thereafter, blood poured from [Farooq's] neck, and [Farooq] stated, 'He
> stabbed me.'*** Three eye-witnesses reported seeing [Littlejohn] make the stabbing
> motion at [Farooq's] neck . . . . [Farooq's] jugular vein and carotid artery were
> severed and [Farooq] suffered a life-threatening loss of blood . . . . [and] organ
> failure.  A knife was recovered at the scene of the crime.  The knife had at least a
> three-inch, serrated, metal blade, and had blood and human tissue on the blade up
> to the handle.  [Littlejohn] was apprehended at the scene of the crime, with blood
> on his clothes and shoes.

*Id.* ¶ 5 (emphasis added).  The D.C. Superior Court further noted that "the condition of the knife

---

    [2] The undisputed material facts necessary to support Essex's motion for summary judgment
are set forth in Essex's Statement of Undisputed Material Facts ("Statement of Facts") that has
been filed contemporaneously pursuant to Local Rule 56.1.  Essex submits the following brief
description of the claim background to present those same facts in narrative fashion.

indicates that [Littlejohn] buried the blade in [Farooq's] throat, all the way up to the handle, [which] indicate[s] a substantial probability that [Littlejohn] had a specific intent to kill or seriously injure [Farooq]." *Id.* ¶ 5.

**B.    Littlejohn Is Charged With Assault and Second Degree Murder and Later Convicted**

Littlejohn was charged with Assault With Intent to Murder While Armed in violation of 22 D.C. Code §§ 403, 2103 and 4502.  The criminal complaint asserted that:

> On or about September 28, 2002, within the District of Columbia, Travis Littlejohn, while armed with a knife assaulted Nadir Farooq with intent to murder him.

*Id.* ¶ 6.  Farooq later died from his wounds on October 7, 2002, and an autopsy determined that the cause of death was a stab wound to the neck and ruled that homicide was the manner of death.  *Id.* ¶ 7.  On October 16, 2002, Littlejohn was charged with Second Degree Murder While Armed, in violation of 22 D.C. Code §§ 2103 and 4502.  The criminal complaint asserted that:

> Travis Littlejohn, within the District of Columbia, while armed with a knife, and with the intent to kill another and to inflict serious bodily injury on another and with a conscious disregard of an extreme risk of death or serious bodily injury to another, caused the death of Nadir Farooq by stabbing him with [a] knife on or about September 28, 2002, thereby causing injuries from which Nadir Farooq died on or about October 7, 2002.

*Id.* ¶ 8.

After a trial lasting several days, on November 15, 2004, a jury found that Littlejohn was guilty of Voluntary Manslaughter While Armed, which is a lesser-included offense of Second Degree Murder While Armed.  *Id.* ¶ 9.  On March 4, 2005, Littlejohn was sentenced to 15 years in prison.  *Id.* ¶ 10.

**C.    The *Farooq* Action**

Amina Farooq, as personal representative of the Estate of Farooq, filed a wrongful death action in D.C. Superior Court against Ramada and two "Doe" defendants, asserting one count

against each defendant.  *Id.* ¶ 11.  Ramada removed the matter to the United States District Court for the District of Columbia, where the lawsuit is pending.  *Id.*

The *Farooq* Complaint alleges that Farooq was attacked and stabbed in the neck while attending the dance at the Ramada, resulting in his death.  *Id.* ¶ 12.  The complaint further alleges that the Ramada is located in "one of the highest crime districts in the District of Columbia" and that "many young persons in high crime communities carry concealed weapons."  *Id.* ¶ 13.  The *Farooq* Complaint also alleges that "notwithstanding this particular knowledge, [Ramada] negligently, recklessly and in wanton and willful disregard for the lives and safety of persons such as [Farooq], breached its duty…

> (a)     By failing to have adequate security on the premises…
> (b)     By failing to have adequately trained or competent security personnel…
> (c)     By failing to provide security guards with proper equipment…; and
> (d)     By failing to establish and enforce measures necessary and reasonable to protect business invitees."

*Id.* ¶ 14.

As a result of Ramada's alleged acts and omissions, according to the *Farooq* Complaint, Farooq "was violently attacked and stabbed by [a] patron with [a] knife while on [the] dance floor" causing Farooq to "suffer physical pain, mental anguish, loss of body functions, hospitalizations, medicine as well as the expense of his last illness, death and burial."  *Id.* ¶ 15.  The *Farooq* Complaint seeks $10 million for compensatory damages and $10 million for punitive damages.  *Id.* ¶ 16.

**D.      The Policy**

Essex issued Commercial General Liability Policy No 3CH1121 to Ramada for the policy period July 10, 2002 to July 10, 2003 (the "Policy").  The Policy affords coverage of $1 million per occurrence and a $2 million aggregate limit for general liability, products liability, completed

operations liability and a $1 million aggregate limit for personal and advertising injury liability.

*Id.* ¶ 17.

### E.     The Assault and/or Battery Exclusions

The Policy, subject to all of its terms and conditions, provides coverage for all sums that

the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property

damage' to which this insurance applies.  *Id.* ¶ 18.  Relevant here, the Policy provides that

> [t]he coverage under this policy does not apply to any claim, suit, cost or expense
> arising out of assault and/or battery, or out of any act or omission in connection
> with the prevention or suppression of such acts, whether caused by or at the
> instigation or direction of any Insured, Insured's employees, patrons or any other
> person.

*Id.* ¶ 19.  Similarly, a second provision of the Policy also excludes from coverage

> [a]ssault and/or [b]attery, or ... any act or omission in connection with the
> prevention or suppression of such acts whether caused by or at the instigation or
> direction of any Insured, Insured's employees, patrons or any other person ….

*Id.* ¶ 20.  A third provision of the Policy further excludes from coverage

> allegations of assault and/or battery, or … of any act or omission in connection
> with the prevention or suppression of such acts, whether caused by or at the
> instigation or direction of the Insured, the Insured's Employees, patrons or any
> other person ….

*Id.* ¶ 21.  Collectively, these exclusions are referred to as the "Assault and/or Battery

Exclusions."

### F.     The Negligent Hiring, Training and Supervision Exclusions

In addition, the Policy provides that

> [t]he coverage under this policy does not apply to "bodily injury," "property
> damage," "personal injury," "advertising injury" or any injury, loss or damage
> arising out of … [a]ny charges or allegations of negligent hiring, employment,
> training, placement or supervision, nor are any expenses nor any obligation to
> share damages with or repay anyone else who must pay damages from same
> covered in this policy.

*Id.* ¶ 22.  Similarly, a second provision of the Policy excludes from coverage

any charges or allegations of negligent hiring, training, placement or supervision.

*Id.* ¶ 23.  A third provision of the Policy further excludes from coverage "any charges or

allegations of negligent hiring, training, placement or supervision."  *Id.* ¶ 24.  Collectively, these

exclusions are referred to as the "Negligent Hiring, Training and Supervision Exclusions."

### G.    The Punitive Damages Exclusion

Finally, the Ramada Policy provides that

> [p]unitive or [e]xemplary [d]amages [are] not covered under this policy nor are
> any expenses nor any obligation to share damages with or repay anyone else who
> must pay damages from same.

*Id.* ¶ 25 (the "Punitive Damages Exclusion").

### H.    The Coverage Dispute

After Ramada tendered notice of the *Farooq* Action on October 25, 2005, Essex agreed

to provide a defense to Ramada, subject to a reservation of the right to later deny coverage and to

file a declaratory judgment action.  Essex thereafter filed this coverage action on February 8,

2006.

## II.    ARGUMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact

and … the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *See

also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Here, the material facts are not in

dispute and the only issues presented are strictly legal ones:  do the Policy's Assault and/or

Battery Exclusions, Negligent Hiring, Training and Supervision Exclusions and Punitive

Damages Exclusion bar coverage for the *Farooq* Action?  As shown below, the answer to each

question is an unqualified yes because the *Farooq* Action asserts that Ramada is liable for an

assault against Farooq and for its failure to provide sufficient security to prevent the assault.

These claims plainly are barred by exclusions in the Policy, and Essex therefore is entitled to a

declaration that is has no duty to defend or to indemnify Ramada.

Under established rules of construction, the interpretation of an insurance policy such as the one issued to Ramada is a matter of law for the Court, *see Rubins Contractors, Inc. v. Lumbermans Mutual Insurance Co.*, 821 F.2d 671, 673 (D.C. Cir. 1987), and where "policies are clear and unambiguous, they will be enforced by the courts as written, so long as they do not violate a statute or public policy." *Chase v. State Farm Fire & Cas. Ins. Co.*, 780 A.2d 1123, 1132 (D.C. 2001) (citation and quotation omitted). *Accord Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1114 (D.C. Cir. 1997). Here, these principles mandate a ruling that, as a matter of law, the Policy provides no coverage for the *Farooq* Action for the reasons set forth at greater length below.

### A.    The Assault and/or Battery Exclusions Bar Coverage for the *Farooq* Action

Farooq's death indisputably was the result of an assault and/or battery and therefore is not covered under the Policy. The stabbing – regardless of how the claims arising out of it are styled – was caused by an assault and/or battery by Littlejohn, as alleged by the *Farooq* Complaint and further evidenced by the initial charge of Assault With a Deadly Weapon and subsequent conviction of Voluntary Manslaughter While Armed. Because the Policy bars coverage for any claims arising out of an assault and/or battery or any efforts to prevent an assault and/or battery, there is no coverage for the *Farooq* Action.

As set forth above, the Policy states, in three separate provisions, that there is no coverage for assault and/or battery claims, including any claims related to the prevention of assault and/or batteries. In particular, the Assault and/or Battery Exclusions provide that

> *[t]he coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts*, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.

- 7 -

*See* Statement of Facts ¶ 19 (emphasis added).[3]

Under similar facts and policy language, courts uniformly hold that assaults like that committed by Littlejohn are barred by an assault and/or battery exclusion. For example, this Court has ruled that an identical assault and/or battery exclusion in another Essex policy barred coverage for claims that a dance club negligently hired sufficient security personnel to prevent an assault and/or battery by a patron of the club. *See Stiglich v. Tracks, D.C., Inc.*, 721 F. Supp. 1386, 1387-88 (D.D.C. 1989). *Stiglich* involved the insured's argument that there was coverage because the underlying claims arose out of negligent "failure to provide adequate supervision and security in the club[,] and not the assault." *Id.* at 1388. In rejecting this argument, the *Stiglich* court first noted that the Essex policy at issue, like the Policy, did not apply to "*any act or omission in connection with the prevention or suppression of [assault and/or battery].*" *Id.* (emphasis in original). Under this policy language, the *Stiglich* court reasoned that "[the insured's] alleged failure to hire sufficient security is precisely an 'act or omission' which could have prevented or suppressed the assault in this case" and thus was not covered. *Id.*

More recently, in *I.J.G., Inc. v. Penn-America Insurance Co.*, 803 A.2d 430 (D.C. 2002),

---

[3] The Policy similarly provides that

> [t]he coverage under this policy does not apply to …[a]ssault and/or [b]attery, or out of any act or omission in connection with the prevention or suppression of such acts whether caused by or at the instigation or direction of any Insured, Insured's employee…

and that

> [t]he coverage under this policy does not apply to … allegations of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the Insured, the Insured's Employees, patrons or any other person …

*See id.* ¶¶ 20-21.

the D.C. Court of Appeals barred coverage for an altercation that broke out in a nightclub under

a similar assault and/or battery exclusion.  In reviewing the underlying facts for which coverage

was sought, the *IJG* court noted that "close inspection of the [underlying] complaint … reveals,

without doubt, that the pleading sets forth a cause of action in tort which is plainly bottomed on

an affray at [the nightclub] at two o'clock in the morning on October 12, 1997." *Id.* at 435.  As

here, in *IJG*, the insured's liability "allegedly arises out of its negligence in providing sufficient

security measures and in failing to prevent or stop the fight and the throwing of beer bottles

which led to [the claimant's] injuries." *Id.* (internal quotations omitted).  Applying the assault

and/or battery exclusion to the facts, the *IJG* court then held that the insurer had no duty to

defend or indemnify its insured for the "straightforward allegations of physical injury occurring

as a consequence of a physical altercation…." *Id.* at 436-37.

Similarly, under an Essex policy that included an endorsement identical to that issued to

Ramada, the United States District Court for the District of Maryland ruled that assaults of

patrons at a bar were excluded from coverage under the Policy.  *See Kamaki Skiathos, Inc. v.*

*Essex Ins. Co.*, 396 F. Supp. 2d 624, 626-29 (D. Md. 2005) (referencing policy form M/E-024

(9/00)), which also was part of the Policy and attached to this brief as Exhibit A).  In analyzing

whether the three underlying lawsuits against the bar were covered, the *Kamaki* court reasoned

that, even though each action referred in some way to the insured's alleged negligence, "there

would be no reason to expect that [the claimant] was complaining of anything other than assault

and/or battery." *Id.* at 628.[4]

---

[4] The decisions in *Stiglich*, *IJG* and *Kamaki* are consistent with decisions in other District of
Columbia and Maryland courts considering whether claims arising out of a violent altercation are
barred by an assault and/or battery exclusion.  *See Interstate Fire & Cas. Co. v. 1218 Wisconsin*
*Ave., Inc.*, 136 F.3d 830, 834 (D.C. Cir. 1998) ("Any claim against [the insured] derived from the
assault and battery claim plainly 'ar[ose] out of  … assault and/or battery' and therefore is

As in *Stiglich*, *IJG*, and *Kamaki*, it is clear that the Policy's Assault and/or Battery Exclusions bar coverage for the *Farooq* Action. The claims in the *Farooq* Action arise out of an assault and/or battery committed by Littlejohn when he stabbed Farooq, resulting in his death. Moreover, the allegation that Ramada was negligent for failing to hire sufficient security personnel is barred because the Policy precludes coverage for any "act or omission in the suppression of" an assault and/or battery "whether caused by or at the instigation of any Insured, Insured's employee, patron or any other person." *See, e.g.,* Statement of Facts ¶ 19. Consequently, for this reason alone Essex is entitled to a declaration that the Assault and/or Battery Exclusions bar coverage for the *Farooq* Action.

### B.    The Negligent Hiring, Training and Supervision Exclusions Bar Coverage

The claims in the *Farooq* Action also are barred by the Policy's Negligent Hiring, Training and Supervision Exclusions. In three places, the Policy bars coverage for "[a]ny charges or allegations of negligent hiring, employment, training, placement or supervision…." *See* Statement of Facts ¶ 22.[5] Courts considering similar policy exclusions have held that there is no coverage for claims similar to those asserted against Ramada. In *Stiglich*, the court held that

---

subject to the assault and battery exclusion."); *Penn-America Ins. Co. v. Lewis*, 395 F. Supp. 2d 250, 254 (D. Md. 2005) ("[t]he gravamen of the [claimant's] allegations in the underlying suit was that the bouncer beat her up without just cause[, which] constitutes an assault and battery and is excluded"); *First Fin. Ins. Co. v. GLM, Inc.*, 88 F. Supp. 2d 425, 429-431 (D. Md. 2000) (holding that allegations against a club for failure to provide sufficient security were barred because the allegations "qualifie[d] as a claim against [the insured's] 'omission in connection with the prevention of an assault or battery' causing [the claimant's] bodily injuries"; *Northfield Ins. Co. v. Boxley*, 215 F. Supp. 2d 656, 660 (D. Md. 2002) (holding that claims of negligence were barred by assault and battery exclusion, reasoning that the underlying complaint "unquestionably arose out of … an assault or battery" (quotation omitted); *Sphere Drake Ins., PLC v. Carolina Restaurant, Inc.*, Civ. A. No. HAR 91-1769, 1992 WL 138352, at * 3 (D. Md. June 3, 1992).

[5] *See also* id. ¶ 23 ("Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision."); *id.* ¶ 24 ("Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision.").

"to the extent that [the claimant's] claims suggest negligent training or supervision of [the insured's] personnel who failed to prevent or stop the assault, the Hiring/Supervision Exclusion explicitly bars coverage." 721 F. Supp. at 1388. *See also Essex Ins. Co. v. Rizqallah Investments, Inc.*, 394 F. Supp. 2d 1002, 1007 (W.D. Mich. 2005); *Essex Ins. Co. v. Manron Assoc., Inc.*, 2005 WL 2089190, at *3 (W.D. Tex. 2005). Under this analysis, the claims in the *Farooq* Action relating to allegations that Ramada failed to train and supervise sufficient security personnel to prevent the assault are barred by the Policy's Negligent, Hiring, Training and Supervision Exclusions. *See* Statement of Facts ¶¶ 22-24. Accordingly, Essex is entitled to a declaration that the Negligent Hiring, Training and Supervision Exclusions bar coverage for the *Farooq* Action.

### C.    Farooq's Punitive Damages Claim Is Not Covered

The plaintiff in the *Farooq* Action seeks punitive damages, which are barred by the plain language of the Policy. Specifically, the Policy provides that "[p]unitive or [e]xemplary [d]amages [are] not covered under this policy …." *See* Statement of Facts ¶ 25. Where the terms of a policy are clear and unambiguous, a court must enforce the terms as written. *See Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1132 (D.C. 2001); *State Farm Mut. Ins. Co. v. DeHaan*, 900 A.2d 208, 225-26 (Md. 2006). Under this authority and the Punitive Damages Exclusion, the punitive damages sought in the *Farooq* Action simply are not covered under the Policy. *See Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, Civ. A. No. 83-3347, 1988 WL 877629, at *81 (D.D.C. Sept. 7, 1998) (holding that punitive damages exclusion bars coverage for punitive damages claim).[6]

---

[6] *See also Essex Ins. Co. v. Peterson*, Civ. A. No. 4:05cv2255, 2006 WL 3103081, at *5 (E.D. Mo. Oct. 31, 2006) (holding that punitive damages exclusion in Essex policy barred coverage for punitive damages sought by claimant).

Moreover, the straightforward application of the Punitive Damages Exclusion is supported by general principles of public policy.  District of Columbia law – which governs the underlying *Farooq* Action – imposes punitive damages to punish misconduct and deter future wrongdoing.  Allowing insurance coverage of punitive damages would undercut both the deterrence and punishment rationales that are supported by punitive damages.  *See Pray v. Lockheed Aircraft Corp.*, 644 F. Supp. 1289, 1298 (D.D.C. 1986); *Salus Corp. v. Cont'l Cas. Co.*, 478 A.2d 1067, 1070 (D.C. 1984); *In re Estate of Corriea*, 719 A.2d 1234, 1240 (D.C. 1998).

Accordingly, Essex is entitled to a declaration that there is no coverage for punitive damages sought in the *Farooq* Action under the Policy.

## III.  CONCLUSION

For the foregoing reasons, under the relevant policy language and applicable law, Essex is entitled to summary judgment as a matter of law and a declaration that it has no duty to defend or to indemnify Ramada for the *Farooq* Action.

Respectfully submitted,

Dated:  December 4, 2006                    By:   /s/ Benjamin C. Eggert
                                                  Sean M. Hanifin, D.C. Bar No. 358347
                                                  Benjamin C. Eggert, D.C. Bar No. 474218
                                                  ROSS, DIXON & BELL, LLP
                                                  2001 K Street, N.W.
                                                  Washington, D.C.  20006-1040
                                                  Telephone: (202) 662-2000
                                                  Facsimile: (202) 662-2190

                                                  *Attorneys for Plaintiff*
                                                  *Essex Insurance Company*

336139 v 1

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, 2006, a copy of the foregoing Essex Insurance Company's Memorandum in Support of its Motion for Summary Judgment was (1) sent by first-class U.S. mail, postage prepaid to counsel listed below and (2) was filed electronically with the Clerk of the Court using the CM/ECF system, which also will send electronic notice of such filing to the following counsel of record:

> Gerald W. Heller, Esq.
> Linowes and Blocher, LLP
> 7200 Wisconsin Avenue, Suite 800
> Bethesda, MD 20814-4842
>
> *Counsel for Defendant MDRB Corp. t/a Ramada Ltd. Corp.*
>
> Othello C. Jones, Jr., Esq.
> Anacostia Professional Building
> 2041 Martin Luther King Jr. Ave., S.E.
> Suite 244
> Washington, D.C.  20020
>
> *Counsel for Defendant Amina Farooq, as Personal Representative of The Estate of Nadir Farooq*

> /s/  Benjamin C. Eggert
> Benjamin C. Eggert

336139 v 1