IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

CIVIL DIVISION

RECEIVED

MAY 0 3 2005

Superior Court of the
District of Columbia
Washington, D.C.

|  |  |  |
|---|---|---|
| AMINA FAROOQ<br>328 – 16th Street, SE<br>Washington, DC 20003 | ) ) ) ) | |
| PERSONAL REPRESENTATIVE OF<br>THE ESATE OF<br>NADIR FAROOQ, Deceased. | ) ) ) ) ) | |
|  | ) | 05-0003385 |
| Plaintiff | ) ) | |
| vs. | ) ) | Civil Action No. |
| MDRB, CORPORATION D/B/A<br>RAMADA INN HOTEL<br>1600 New York Avenue, NE<br>Washington, DC 20002 | ) ) ) ) ) | |
| **Registered Agent:**<br>ALBERT CECCONE<br>4505 Harrison Street, NW<br>Washington, DC 20015 | ) ) ) ) ) | |
| and | ) ) | |
| JOHN DOE D/B/A T.C.B. (TAKING<br>CARE OF BUSINESS), EVENT<br>SPONSOR | ) ) ) ) | |
| and | ) ) | |
| RICHARD DOE (SECURITY | ) ) | |
| Defendants | ) | |

## COMPLAINT FOR WRONGFUL DEATH AND DAMAGES

Comes now the Plaintiff, AMINA FAROOQ, Personal Representative of the Estate of NADIR FAROOQ, deceased, by and through her attorney, Othello G. Jones, Jr., and respectfully moves this Honorable Court and for a cause of action alleges:

1. That Jurisdiction of this Court is evoked by virtue of Title II Section 921 of the Code of the District of Columbia as amended.

2. That Plaintiff, AMINA FAROOQ, the mother of the decedent, NADIR FAROOQ, was duly appointed as Personal Representative of decedent's estate on December 17, 2002. A copy of Letters of Administration is attached hereto and made a party thereof.

3. That at all times relevant, the decedent, NADIR FAROOQ was a resident and citizen of the District of Columbia.

4. That at all times relevant herein, Defendant MDRB, CORPORATION D/B/A RAMADA INN HOTEL, was a corporation authorized, conducting and operating a hotel/motel business at 1600 New York Avenue, NE, Washington, DC.

5. That at all times relevant, Defendant, JOHN DOE D/B/A T.C.B. (TAKING CARE OF BUSINESS) did lease and operate a Go-Go Disco dance at Defendant MDRB, CORPORATION D/B/A RAMADA INN HOTEL hotel/motel at 1600 New York Avenue, NE, Washington, DC on September 27, 2002.

6. That at all times relevant, Defendant RICHARD ROE SECURITY COMPANY was hired by aforementioned Defendants to provide the security to ensure the safety of persons attending the Go-Go disco dance.

7. That Plaintiff brings this action against the Defendants, jointly and severally for a cause herein alleged.

<u>COUNT I</u>

8. That on or about September 27, 2002, at approximately 10:00 p.m., the decedent, NADIR FAROOQ, was a lawful guest and business invitee of the Defendant, MDRB, CORPORATION D/B/A RAMADA INN HOTEL premises at 1600 New York Avenue, NE, Washington, DC having paid the admission fee to enter and attend the Go-Go Disco dance being held there.

9. That on or about September 27, 2002, while decedent, NADIR FAROOQ was a guest and invitee in Defendant's MDRB, CORPORATION D/B/A RAMADA INN HOTEL, he was attacked and stabbed in the neck with a knife by another patron attending the Go-Go Disco.

10. That Plaintiff alleges that the attack and wrongful death of decedent, NADIR FAROOQ, occurred as the proximate result of Defendant's negligence and breach of its legal duties and obligations to decedent as herein set forth.

11. That Plaintiff alleges that for along period of time prior to September 27, 2002, Defendant knew or should have known with the exercise of reasonable care that:

a) its hotel/motel was located in one of the highest crime districts in the District of Columbia;

b) various violent crimes had occurred in and about premises where Go-Go Disco Dances were attended by young people;

c) sale to and consumption by young people of alcoholic beverages often to lead hostile and violent action and reaction; and

d) many young persons in high crime communities carry concealed weapons.

12. That despite Defendant's notice of the danger of violent reactions by young people attending Disco Go-Go Dances, it negligently failed to adopt policy to prevent persons attending such dances from bringing concealed weapons into its dance ballroom.

13. That notwithstanding this particular knowledge and recognition of its legal duty, Defendant negligently, recklessly, and in wanton and willful disregard for the lives and safety of persons such as the decedent, breached its duty to decedent in, but not limited to, the following ways:

a) By failing to have adequate security on the premises so as to deter criminal activities against guests such as the decedent;

b) By failing to have adequately trained or competent security personnel on duty to protect decedent from attack by third persons;

c) By failing to provide security guards with proper equipment to detect possible concealed weapons; and

d) By failing to establish and enforce measures necessary and reasonable to protect business invitees such as decedent from persons carrying concealed weapons into disco dance on its premises.

14. That the decedent's injuries and death were wrongfully caused by the negligence of Defendants, its servants, agents and employees, who failed to properly search each patron and failed to detect and remove weapons of danger form the possession of seeking entry into the Go-Go Disco Dance.

15. That as a direct and proximate result of Defendants' negligence, wanton and willful disregard for the decedent's safety and decedent's life and its willful failure to establish and enforce adequate standards to detect concealed weapons, the decedent was violently attacked and stabbed by patron with knife while on dance floor.

16. That as a direct and proximate result of Defendant's negligence, decedent, NADIR FAROOQ was caused to suffer physical pain, mental anguish, loss of body functions, hospitalization, medicine as well as the expense of his last illness, death and burial.

## COUNT II

17. That Plaintiff adopts and incorporates by reference, all facts, counts and allegations set forth above in paragraph 1 – 16.

18. That Plaintiff alleges that Defendant JOHN DOE D/B/A T.C.B. (TAKING CARE OF BUSINESS) was the sponsor of the Go-Go Disco Dance held in the MDRB, CORPORATION D/B/A RAMADA INN HOTEL at 1600 New York Avenue, NE, Washington, DC.

19. That on or about September 27, 2002, the decedent, NADIR FAROOQ, was an invitee and paying patron into disco dance being in the MDRB, CORPORATION D/B/A RAMADA INN HOTEL at 1600 New York Avenue, NE, Washington, DC.

20. That Defendant JOHN DOE D/B/A T.C.B. (TAKING CARE OF BUSINESS) use of MDRB, CORPORATION D/B/A RAMADA INN HOTEL ballroom was with the express consent and knowledge of Defendant MDRB. CORPORATION D/B/A RAMADA INN HOTEL.

21. That Defendant knew or should have know that failure to properly search, failure to detect, and failure to move dangerous or concealed weapons on persons entering Go-Go Disco Dance increased use of deadly force against decedent and other patrons.

22. That Defendant knew or should have foreseen that young persons would behave in a hostile, violent and disorderly manner when alcoholic beverages are consumed by them.

23. That Defendant knew or should have know that fights were likely between young persons attending disco dances.

24. That as a result of the inadequate precautions and insufficient security measures taken by the Defendant, the decedent was stabled and killed by a patron who brought a concealed weapon into the disco dance.

25. That the Defendant negligently or willfully misrepresented to the decedent that it provided and maintained adequate and reasonable security for patrons of disco dance.

COUNT III

26. That Plaintiff adopts and incorporates by reference all facts, counts and allegations set forth above in paragraph 1 – 25.

27. That at all times material hereto, Defendant RICHARD ROE SECURITY was Employed to provide security at disco dance in MDRB, CORPORATION D/B/A RAMADA INN HOTEL at 1600 New York Avenue, NE, Washington, DC.

28. That Defendant RICHARD ROE SECURITY was negligent in its failure to

adequately and properly search each patron for concealed weapons and remove and/or confiscate such weapons prior to entry into the disco dance.

29. That as a direct and proximate result of the Defendant's negligence, decedent was stabled and killed with a knife that was brought into disco room by another patron.

WHEREFORE, the Plaintiff prays:

1.      For a Judgment against the Defendants, jointly and severally, for compensatory damages in the amount of Ten Million Dollars ($10,000,000.00).

2.      For a Judgment against the Defendants, jointly and severally, for punitive damages in the amount of Ten Million Dollars ($10,000,000.00).

3.      For costs related to this action and reasonable attorney's fees.

4.      For such other and further relief as this court may deem just and proper.

OTHELLO G. JONES, JR., #25031-A
Anacostia Professional Building
2041 Martin Luther King Jr. Avenue, SE
Suite 244
Washington, DC 20020
(202) 889-1010
Attorney for Plaintiff

**Trial by Jury of Six is Demanded.**

OTHELLO G. JONES, JR.

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

CRIMINAL DIVISION - FELONY BRANCH

UNITED STATES OF AMERICA          :  Court Case No. F-6291-02

              v.                  :  Judge Weisberg

TRAVIS LITTLEJOHN                 :  Felony Status Conference:
                                     11/24/02; Trial Date:12/12/02

## FINDINGS OF FACT, CONCLUSIONS OF LAW
## AND ORDER OF DETENTION PENDING TRIAL

This matter came before the Court on October 3, 2002, upon the motion of the United States to hold the defendant without bond pending his trial within one hundred days pursuant to 23 D.C. Code §§ 1322(b)(1)(A). Having considered the factors enumerated in 23 D.C. Code § 1322(e), the defendant's ~~prior record and~~ indicia of dangerousness, the report and recommendation of the Pretrial Services Agency, the testimony of Metropolitan Police Department Detective Kimberly Metivier, and the arguments of counsel for the defendant and the Government, in accord with 23 D.C. Code § 1322(g)(1), the Court makes the following findings of fact and conclusions of law:

1. There is a substantial probability to believe that the defendant committed the offense of Assault With Intent to Commit Murder While Armed. Evidence introduced at the defendant's detention hearing established that on September 28, 2002, the defendant approached the victim after the victim had a verbal

altercation with an associate of the defendant's at a "go-go" at the Ramada Inn, located at 1600 New York Avenue, N.E. Without provocation from the victim, who was un-armed, defendant made a stabbing or swinging motion at the victim's neck, and made contact with the victim's neck. Immediately thereafter, blood poured from the victim's neck, and the victim stated, "He stabbed me." Three eye-witnesses reported seeing the defendant make the stabbing motion at the victim's neck, although none of them saw the knife. The victim's jugular vein and carotid artery were severed and he suffered a life-threatening loss of blood. He has not been conscious since the incident, and is experiencing organ failure. A knife was recovered at the scene of the crime. The knife had at least a three-inch, serrated, metal blade, and had blood and human tissue on the blade up to the handle. The defendant was apprehended at the scene of the crime, with blood on his clothes and shoes.

2. In determining whether there are conditions of release that will reasonably assure the appearance of the person as required or the safety of any other person or the community, the Court has considered the following factors:

a. The nature and circumstances of the offense charged. Here, there is a substantial probability to believe that the defendant committed Assault With Intent to Commit Murder, a crime of violence as defined by D.C. Code § 23-1331(4).

b. The weight of the evidence against the defendant.

- 2 -

c. 'The defendant's criminal history. *Defendant has no previous juvenile adjudications or adult arrests n convictions*

d.    The nature and seriousness of the danger to the community that would be posed by the defendant's release.    Here, it is noteworthy that defendant stabbed the victim with no provocation, in retaliation for a verbal altercation that the victim had with an associate of the defendant's.    Moreover, the condition of the knife indicates that the defendant buried the blade in the victim's throat, all the way up to the handle. These facts indicate by a substantial probability that the defendant had a specific intent to kill or seriously injure the victim, or acted in conscious disregard of an extreme risk of death or serious bodily injury to the victim. *Defendant admitted to the Pretrial Services Agency that he had used drugs in the week immediately preceding his arrest.*

WHEREFORE, having considered the provisions of 23 D.C. Code § 1322, and the factors set forth in 23 D.C. Code § 1322(e), this Court finds, by clear and convincing evidence, that there is no condition or combination of conditions, as set forth in 23 D.C. Code § 1321(c), which will reasonably assure the safety of any other person or the community.

Accordingly, it is this *8th* day of October, 2002,

ORDERED, that the defendant be held without bond, pending the trial or other final disposition of this matter, for a period not to exceed one hundred calendar days until the trial or other final disposition of this matter;

- 3 -

P 000268

**AND FURTHER ORDERED** that the defendant be committed to the custody of the Attorney General of the United States for confinement in a facility separate, to the extent practicable, from persons awaiting or serving sentences or being held pending appeal; that the defendant be afforded a reasonable opportunity for private consultation with counsel; and that, on order of a judicial officer or request of an attorney for the government, the defendant be delivered to the United States Marshal or other appropriate person for appearance in a court proceeding.

October 8, 2002
DATE

Frederick H. Weisberg
Judge

cc:    Florence Pan
       Assistant United States Attorney
       555 4th Street, N.W.
       Washington, D.C.  20530

       Gene Johnson, Esq.,
       640 Orleans Place, N.E.
       Washington, DC 20003

- 4 -

P 000269

DIS___ OF COLUMBIA SUPERIOR C___
OFFICE ___ THE UNITED STATES ATTORN___

## UNITED STATES
vs

## TRAVIS LITTLEJOHN

**TITLE 16 CASE**

On Saturday, September 28, 2002, a go-go dance party was held in a banquet room at the Ramada Inn located at 1600 New York Ave, N.E., Washington, D.C. The D.C. Fire Marshall at the location ordered that the event be closed as the facility was filled in excess of its capacity. Officers with the Metropolitan Police Department were called to the scene to assist with the dismissal; they arrived at approximately 1:00 a.m. Shortly before the arrival of the police, Nadir Farooq and Travis Littlejohn had had a verbal dispute. During the course of the dispute, Mr. Farooq, who was unarmed, was stabbed one time in the neck by Littlejohn. As Littlejohn was running out of the banquet hall, he was restrained by security guards on the scene. An arriving MPD officer noticed security guards holding onto the defendant. This officer was then told that defendant Littlejohn had just stabbed Farooq.

The officer arrested defendant Littlejohn and place him in handcuffs. Defendant Littlejohn indicated that he was not hurt or injured. Officers found the victim lying on the floor of a hallway suffering from an apparent stab wound to the neck. He had lost a large amount of blood from bleeding associated with the injury Mr. Farooq was transported to Howard University Hospital. A folding knife with apparent blood on the blade was recovered from the scene. Mr. Farooq was admitted to Howard in poor condition. He died on October 7, 2002, at 2:24 p.m. His body was transported to the Office of the Chief Medical Examiner for the District of Columbia. Dr. Sarah Colvin performed an autopsy on the body on October 8, 2002. She determined that the cause of death was a stab wound to the neck; she ruled homicide as the manner of death.

Witnesses to the stabbing were interviewed at the scene. One security person and several other eyewitnesses identified defendant Littlejohn as the person who stabbed Mr. Farooq.

_16th October 02_

Subscribed and sworn to before me this 16th day of October, 2002

_____    _____    _____    _____
Police Officer      Badge      District    Deputy Clerk

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CRIMINAL DIVISION

## COMPLAINT

No. **F0629102**

District of Columbia ss:

Defendant's Name: Travis Littlejohn

| (First) | (MI) | (Last) | 543830 | 02145315 |
|---|---|---|---|---|
| | | | (PDID) | (CCNO) |

Address: _____

On or about September 28, 2002, within the District of Columbia, Travis Littlejohn, while armed with a knife, assaulted Nadir Farooq with intent to murder him. (Assault With Intent To Murder While Armed, in violation of 22 D.C. Code, Section 403, 2103, 4502 (2001 ed.))

Co-Defendants:

Affiant's Name

Subscribed and sworn to before me this _____ 28 _____ day of _____ September, 2002

(Judge) (Deputy Clerk)

## WARRANT

*To The United States Marshal or any other authorized federal officer or the Chief of Police of the District of Columbia:*
  WHEREAS the foregoing complaint and affidavit supporting the allegations thereof have been sub-mitted, and there appearing probable cause and reasonable grounds for the issuance of an arrest warrant for _____

YOU ARE THEREFORE COMMANDED TO BRING THE DEFENDANT BEFORE SAID COURT OR OTHER PERSON ENUMERATED IN 18 U.S.C. 3041 forthwith to answer said charge.

Issued _____

Judge
Superior Court of the District of Columbia

| Sex: Male | DOB: 04/06/1985 | CCN: 02145315 | PDID: 543830 |
|---|---|---|---|

| Papering Officer: Kimberley J Metivier | Badge No.: D20371 |
|---|---|

### OFFICER MUST EXECUTE RETURN

| Officer's Name: | Date / Time: | P 000265 |
|---|---|---|

| AUSA Signature: | Fel. I ☐ | AFTC ☒ | Domestic ☐ |
|---|---|---|---|

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CRIMINAL DIVISION

### COMPLAINT

CLERK OF
SUPERIOR COURT OF THE
DISTRICT OF COLUMBIA
CRIMINAL DIVISION

No. **F0666902**

**District of Columbia ss:**

**Defendant's Name:** Travis  Littlejohn

2002 OCT 16  P 1: 29

02145315

| (First) | (MI) | (Last) | (PDID) | (CCNO) |

**Address:** _____

RECEIVED

Travis Littlejohn, within the District of Columbia, while armed with a knife, and with the intent to kill another and to inflict serious bodily injury on another and with a conscious disregard of an extreme risk of death or serious bodily injury to another, caused the death of Nadir Farooq by stabbing him with knife on or about September 28, 2002, thereby causing injuries from which Nadir Farooq died on or about October 7, 2002.  **(Second Degree Murder While Armed, in violation of 22 D.C. Code, Sections 2103, 4502 (2001 ed.))**

**Co-Defendants:**

Affiant's Name

Subscribed and sworn to before me this _____16_____ day of _____October, 2002_____

(Judge) (Deputy Clerk)

### WARRANT

*To The United States Marshal or any other authorized federal officer or the Chief of Police of the District of Columbia:*
     WHEREAS the foregoing complaint and affidavit supporting the allegations thereof have been submitted, and there appearing probable cause and reasonable grounds for the issuance of an arrest warrant for _____

**YOU ARE THEREFORE COMMANDED TO BRING THE DEFENDANT BEFORE SAID COURT OR OTHER PERSON ENUMERATED IN 18 U.S.C. 3041 forthwith to answer said charge.**

**Issued** _____  _____

Judge
Superior Court of the District of Columbia

| Sex Male | DOB: 04/03/1985 | CCN: 02145315 | PDID: |
| Papering Officer: Kimberley J Metivier | | | Badge No.: D20371 |

### OFFICER MUST EXECUTE RETURN

| Officer Name: | | Date / Time: | | |
| AUSA Signature: | | | Fel. ☒  AFTC ☐  Domestic | |

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. F-6669-02 |
| v. | ) | |
| TRAVIS B. LITTLEJOHN | ) | JUDGE ERIK P. CHRISTIAN |

## VERDICT FORM

**IA.** With respect to the charge of <u>SECOND DEGREE MURDER WHILE ARMED</u>, as set forth in the indictment we, the jury, find the defendant:

\_\_\_\_\_ Guilty          ✓ Not Guilty

(IF THE JURY FINDS THE DEFENDANT "GUILTY" OF THE GREATER OFFENSE OF SECOND DEGREE MURDER WHILE ARMED, THE JURY SHOULD <u>NOT</u> CONSIDER THE LESSER OFFENSE OF VOLUNTARY MANSLAUGHTER WHILE ARMED. IF THE JURY FINDS THE DEFENDANT "NOT GUILTY" OF THE GREATER OFFENSE OF SECOND DEGREE MURDER WHILE ARMED, THE JURY SHOULD THENCONSIDER THE LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER WHILE ARMED.)

**IB.** With respect to the charge of <u>VOLUNTARY MANSLAUGHTER WHILE ARMED</u>, a lesser-included offense of Second Degree Murder while Armed, we, the jury, find the defendant:

✓ Guilty          \_\_\_\_\_ Not Guilty

*Jeannette Murphy* #5
**FOREPERSON, Juror #**          P 000384

*November 15, 2004*
**DATE**

55

1

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America
V.

*In-Jail*

JUDGMENT IN A CRIMINAL CASE

TRAVIS LITTLE JOHN

Case Number: F-6669-02
PDID No.  543-830

## THE DEFENDANT:

☐ ENTERED A PLEA OF GUILTY TO COUNT (S) _____

☒ WAS FOUND GUILTY ON COUNT (S) "C" _____
    AFTER A PLEA OF NOT GUILTY.

| Count | Nature of Charges | Title & Section | Date of Offense |
|-------|-------------------|-----------------|-----------------|
| Count C | Manslaughter w/Armed (Vol.) | 22-2405, 3202 | Sep. 28, 2002 |

## SENTENCE OF THE COURT

COUNT "C" (180) ONE HUNDRED EIGHTY MONTHS IN JAIL FOLLOWED BY (5) FIVE YEARS OF SUPERVISED RELEASE. DEFENDANT TO PAY $100.00 PURSUANT TO VVCC - TO BE TAKEN FROM JAIL PAY.

☒ The defendant is hereby committed to the custody of the Attorney General to be imprisoned for a total term of,

(180) ONE HUNDRED EIGHTY MONTHS    ☐ MANDATORY MINIMUM term of _____ applies.

☒ Upon release from imprisonment, the defendant shall be on supervised release for a term of  (5) FIVE YEARS

☐ The Court makes the following recommendations to the Bureau of Prisons:

Costs in the aggregate amount of $ 100.00 (ONE HUNDRED) DOLLARS  have been assessed under the Victims of Violent Crime Compensation Act of 1996, and ☐ have  ☒ have not been paid.

March 4, 2005
_____
Date

_____
Judge

ERIK P. CHRISTIAN, Associate Judge"
_____
Name and Title of Judicial Officer

Certification by Clerk pursuant to Criminal Rule 32(d).

March 4, 2005
_____
Date

MALCOLM P. DREWERY, I
_____
Deputy Clerk

nupeppo tune
3/3/05

DKC 06 CV 326



ESSEX
INSURANCE
COMPANY

# INSURANCE
# POLICY

**MARKEL**  **ESSEX INSURANCE COMPANY**

## COMMERCIAL LIABILITY DECLARATIONS

NEW BUSINESS
Renewal of Number

**Policy Number**
3CH1121

Item 1. Named Insured and Mailing Address:
RAMADA LIMITED CORP.,
MDRB CORP. T/A
1600 NEW YORK AVE., NE
WSHINGTON, DC   20002

Item 2.  Policy Period   From: 07/10/2002   To: 07/10/2003   Term: 1 YEAR
12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

Item 3.   Retroactive Date: N/A

Item 4.   Business Description: HOTEL

Item 5.   In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | 011-1061(8/94) | $ 10,046.00 |
| Professional Liability Coverage Part | | $NOT COVR'D |
| | | $ |
| | | $ |
| | | $ |
| POLICY FEE | | $     100.00 |
| DCSL TAX | | $     200.92 |
| | | $ |
| Audit Period Annual unless otherwise stated: _____ | Total | $ 10,346.92 |

Item 6.   Forms and endorsements applicable to all Coverage Parts: 011-1054(4-00), 011-1061(8-94)
SHOW NUMBERS

PN/SF

Agent Name and Address: ROYAL OAK UNDERWRITERS, INC., 8417 PATTERSON AVE., RICHMOND, VA  23229
Agent Number: 101970

Countersigned  08/12/2002          By _____
DATE

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS,
COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

011-1055 (9-93)                    COMPANY

**MARKEL**

# ESSEX INSURANCE COMPANY

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number ___3CH1121___

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $ 2,000,000 |
| Products/Completed Operations Aggregate Limit | $ 2,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Fire Damage Limit | $ 50,000 any one fire |
| Medical Expense Limit | $ 1,000 any one person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of business:

☐ Individual    ☐ Joint Venture    ☐ Partnership    ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy:

1600 NEW YORK AVE., NE, WASHINGTON, DC    20002

### PREMIUM

| Classification | Code No. | *Premium Basis | PR/Co | Rate All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|
| HOTELS AND MOTELS-WITH POOLS OR BEACHES FOUR STORIES OR MORE INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS | 45191 | S)$1200000 | INCLUDED | 6.25 | $ INCLUDED | $ 10,046.00 MP |

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

**TOTAL ADVANCE PREMIUM** $ 10,046.00 MP

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

011-1054(4-00), 011-1095(07-01), ME-001(4-00), ME-001A(07-01), ME-024(9-00), ME-039(4-99), ME-048(4-99), ME-064(4-99), ME-091(2-01), ME-091-1(4-99), ME-143(4-99), ME-189(9-00), CG 00 01 (07-98), CG 21 69 (01-02)

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

011-1061 (8-94)

COMPANY

In consideration of the payment of the Premium, in reliance upon the statements made to the Company by application and subject to the terms set forth herein, the Company designated on the Declarations page (A Capital Stock Company), herein called the Company, AGREES with the Insured:

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

### A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed proof of mailing will be sufficient proof of notice.

### B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:
1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.

And we do not warrant that conditions:

1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### E. PREMIUMS

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.
3. Premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

### F. PREMIUMS, MINIMUM DEPOSIT AND AUDIT

All references in this policy to minimum and/or deposit premiums and premium audits is replaced by the following, as respects casualty:

Premium shown as advanced premium is both a deposit premium and a minimum premium for the policy term. At the close of each audit period we will compute earned premium for that period. If earned is more than advance premium then the amount by which it exceeds advance premium is due and payable on notice to you. If earned is less, advance premium applies as the minimum premium with no return payable to you.

If this policy is cancelled the pro rata or short rate of the minimum and deposit premium will apply for the policy term, subject to an absolute minimum earned premium of 25% of the total advance premium, unless final audit develops greater than said 25%. If your business is a seasonable business, however, the minimum premium then becomes fully earned at the end of your season.

### G. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

011-1054 (Rev.4-00)

This Policy is not valid unless a Declarations Page and Coverage Form is attached.

continued...

## NUCLEAR ENERGY LIABILITY EXCLUSION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses Incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if

(1) The "nuclear material" (a) is at any "nuclear facility" owned by or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:
(a) Any "nuclear reactor;"
(b) Any building, premises or property owned, leased, loaned or used by or on behalf of the insured where "hazardous properties," "nuclear material" or "radioactive material" is used, processed or stored or has been discharged or dispersed therefrom;
(c) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"
(d) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
(e) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;" and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

SERVICE OF SUIT

It is agreed that in the event of the failure of this Company herein to pay any amount claimed to be due hereunder, this Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at 4521 Highwoods Parkway, Glen Allen, VA  23060-6148 and that in any suit instituted against any one of them upon this Policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of this company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any state, territory or district of the United States of America, which makes provision therefor, this Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.


    **Secretary**                                    **President**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright. Insurance Services Office, Inc 1982, 1983

011-1054 (Rev.4-00)                    3 of 3

 **MARKEL** # ESSEX INSURANCE COMPANY

*\* Entry optional if shown in the Common Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT · | *ISSUED TO |
|---|---|---|
| | | |

## THIS ENDORSEMENT CHANGES THE POLICY.

## ESSEX PRIVACY NOTICE

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms; and/or
- Information about your transactions with us, our affiliates, or others; and/or
- Information we receive from a consumer reporting agency; and/or
- Information we receive from inspection reports.

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Financial service providers, such as insurance agents and/or brokers.

We may also disclose nonpublic personal information about you to non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you.  We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

/

_____     _____
AUTHORIZED REPRESENTATIVE ·     DATE

COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    **(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)** That the insured would have in the absence of the contract or agreement; or

    **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

        **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    □

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

  **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

  **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

  **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

 Copyright, Insurance Services Office, Inc., 1997

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

    Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98    □

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section; or

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

 Copyright, Insurance Services Office, Inc., 1997

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   **(1)** First aid administered at the time of an accident;

   **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

## 2. Exclusions

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

   **(1)** Agrees in writing to:

     **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

     **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

     **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

     **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997
CG 00 01 07 98    □

(2) Provides us with written authorization to:

    (a) Obtain records and other information related to the "suit"; and

    (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal and advertising injury":

    (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

    (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

    (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

    (d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

    (a) Owned, occupied or used by,

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

 Copyright, Insurance Services Office, Inc., 1997 □

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage A; and

**b.** Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    □

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

    Copyright, Insurance Services Office, Inc., 1997       □

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

**2.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

    Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98    ☐

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

**c.** All parts of the world if:

  **(1)** The injury or damage arises out of:

  **(a)** Goods or products made or sold by you in the territory described in **a.** above; or

  **(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

  **(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

  **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

  **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

  **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

  **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

  **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, water-craft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98    □

**b.** Does not include "bodily injury" or "property damage" arising out of:

  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

  **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Your product" means:

  **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **(1)** You;

    **(2)** Others trading under your name; or

    **(3)** A person or organization whose business or assets you have acquired; and

  **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**21.** "Your work" means:

  **a.** Work or operations performed by you or on your behalf; and

  **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  **b.** The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1997

# ESSEX INSURANCE COMPANY

**MARKEL**

## COMBINATION GENERAL ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *Attached to and Forming Part of Policy No. | *Effective Date of Endorsement | *Issued to |
|---|---|---|
|  |  |  |

**THIS ENDORSEMENT CHANGES THE POLICY.**

1. Employer's Liability under 2. E. Exclusions, Commercial General Liability Coverage Form, Section I. – Coverage, is replaced by the following and applies throughout this policy:
   This insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury" to
   (1) any employee of a Named Insured arising out of and in the course of employment or while performing duties related to the conduct of the insured's business; or
   (2) the spouse, child, parent, brother, sister or relative of that employee as a consequence of (1).
   This exclusion applies whether an Insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "Insured Contract."
   Wherever the word "employee" appears above, it shall also mean any member, associate, leased worker, temporary worker or any person or persons loaned to or volunteering services to you.

2. With respect to any "auto," under 2. Exclusions, g. Aircraft, Auto or Watercraft, Commercial General Liability Coverage Form, Section I. Coverages, the first paragraph is replaced by the following and applies throughout this policy:
   This insurance does not apply to "bodily injury" or "property damage" arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any "auto." Use includes operation and "loading and unloading."

3. Employment-Related Practices Exclusion is added to Coverages A and B, Section I, Commercial General Liability Coverage Form and to any other coverage under this policy as follows:
   Employment-Related Practices, regardless of allegations, are not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, including but not limited to:
   (A) Refusal to employ or Termination of Employment; or
   (B) Discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation or other employment-related practices, policies, acts or omissions; or
   (C) Consequential "Bodily Injury" or "Personal Injury" as a result of (A) and (B).

4. Under 2. Exclusions, f. Pollution, Commercial General Liability Coverage Form, Section I. – Coverages, Pollution/environmental impairment/contamination is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of same. All liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity is excluded throughout this policy. All wording is replaced by the following:
   (A) "Bodily Injury," "Personal Injury," "Property Damage," or Damages for the devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense; or
   (B) Any loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order, governmental authority or directive or that of any private party or citizen action that any Insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess same the effects of pollutants, environmental impairments, contaminants or (2) any litigation or administrative procedure in which any Insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or placement of pollutants, environmental impairments, contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

Pollutants mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

5. Asbestos, Lead or Silica Dust is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of:

    (A) "Bodily Injury," "Personal Injury," "Property Damage" or Damages of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances from asbestos, lead or silica dust in any form, or from any goods, products or structures containing same, or "Property Damage" or devaluation of property arising from any form of same; or

    (B) Existence of asbestos, silica dust or lead, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or

    (C) Any supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, contain, treat, detoxify, neutralize, or disposal of same or in any way respond to or assess the effects of same.

6. Punitive or Exemplary Damages is not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same. (Exception: This does not apply to Punitive Damages from Wrongful Death brought under Alabama's Wrongful Death Statute.)

7. Discrimination charges, of any kind, actual and alleged, are not covered under this policy, nor any expenses or obligation to share damages with or repay another whom must pay from same.

8. If you are a contractor, builder or developer, there is no coverage under this policy for:

    (1) "Bodily injury," "personal injury" or "property damage" caused by acts of independent Contractors/subcontractors contracted by you or on your behalf unless you obtain Certificates of Insurance from them providing evidence of at least like coverage and limits of liability as provided by this policy and naming you as an additional insured.

    (2) "Bodily injury," "personal injury" or "property damage" sustained by any independent contractor/ subcontractor, or any employee, leased worker, temporary or volunteer help of same, unless a Named Insured or employee of a Named Insured is on site, at the time of the injury or damage, and the Named Insured's actions or inactions are the direct cause of the injury or damage, or the injury or damage is directly caused by an employee of the Named Insured.

9. Professional Liability, Malpractice, Errors, Omission, Acts of any type including rendering or failure to render any type professional service is not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, unless such coverage is specifically endorsed onto this policy.

10. Duty to Defend: Where there is no coverage under this policy, there is no duty to defend.

# ESSEX INSURANCE COMPANY

**MARKEL**

## ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
|  |  |  |

**THIS ENDORSEMENT CHANGES THE POLICY.**

### Amendment to M/E-001

It is hereby understood and agreed that Item 5 of either M/E-001(4/00) or M/E-001(4/99) is amended to read as follows:

5. Asbestos, Lead, Silica Dust, Mold, Bio-organic Growth or Mildew are not covered under this policy, nor are any expenses nor are any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of:

   (a) "Bodily Injury," "Personal Injury," "Property Damage" or Damages of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances from asbestos, lead, silica dust, mold, bio-organic growth or mildew in any form, or from any goods, products or structures containing same; or

   (b) Existence of asbestos, lead, silica dust, mold, bio-organic growth or mildew, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or

   (c) Any supervision, instructions, recommendations, requests, or warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same or in any way respond to assess the effects of same.

_____   /
AUTHORIZED REPRESENTATIVE    DATE

M/E-001A (7/01)

**MARKEL**

# ESSEX INSURANCE COMPANY

## ASSAULT AND/OR BATTERY EXCLUSION

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| | | |

### THIS ENDORSEMENT CHANGES THE POLICY.

The coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person. Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property. The sentence "This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property" is deleted from the Commercial General Liability Coverage Form, Section I, Item 2., Exclusions, a.

_____/
AUTHORIZED REPRESENTATIVE          DATE

M/E-024 (9/00)

# **ESSEX INSURANCE COMPANY**

**MARKEL**

## **CONTRACTUAL LIABILITY LIMITATION ENDORSEMENT**

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| | | |

**THIS ENDORSEMENT CHANGES THE POLICY.**

Definition of "insured contract" under this policy is replaced by the following:

"Insured Contract" means any written:

1.  Lease of premises; or
2.  Easement agreement except in connection with construction or demolition operations on or adjacent to a railroad; or
3.  Indemnification of a municipality as required by ordinance, except in connection with work for the municipality; or
4.  Sidetrack agreement or any easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade; or
5.  Elevator maintenance agreement.

An "Insured Contract" does not include that part of any contract or agreement that indemnifies any person or organization for damage by fire to premises rented or loaned to you.

_____ /
AUTHORIZED REPRESENTATIVE

DATE

ME-039(4/99)



**ESSEX INSURANCE COMPANY**

## DEDUCTIBLE ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CH1121 | 07/10/2002 | RAMADA LIMITED CORP., MDRB CORP. T/A |

**THIS ENDORSEMENT CHANGES THE POLICY.**

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| If provided by this policy: Bodily Injury, Property Damage, Professional or Personal and Advertising Injury Liability | $ 500 | Per Claim |
| Exception: | | |
| _____ | $ | Per Claim |

☐ If this box is so marked, the basis of deductible is amended to apply 'on a per item per claim' property damage deductible basis.

1. Our obligation under Bodily Injury Liability, Property Damage Liability, Professional Liability, Personal and/or Advertising Injury Liability, or any other coverage under this policy, to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above. The deductible amount stated above shall be applicable to each claim and will include loss payments, adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

2. The deductible amount stated above applies under the coverages respectively to all damages sustained by one person, or organization, as the result of any one occurrence.

3. The terms of this insurance, including those with respect to:
   (a) Our right and duty to defend any "suits" seeking those damages; and
   (b) Your duties in the event of an "occurrence," claim, or suit apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

_____ / _____

AUTHORIZED REPRESENTATIVE        DATE

**MARKEL** **ESSEX INSURANCE COMPANY**

## DATE RELATED/DATE SENSITIVE/YEAR 2000 COMPUTER RELATED FAILURES AND OTHER ELECTRONIC PROBLEMS EXCLUSION

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| | | |

**THIS ENDORSEMENT CHANGES YOUR POLICY AND APPLIES TO ALL COVERAGES UNDER THIS POLICY.**

Year 2000 Computer-Related, and/or all date related failure(s) or date sensitive calculations which result in failure(s) and Other Electronic Problems are not covered under this policy, nor any consequential damages resulting therefrom, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, as a result of

(A)    any actual or alleged failure, malfunction or inadequacy of, whether belonging to an Insured or to others, computer hardware, including microprocessors (computer chips) whether a part of any computer system or not, computer application software, computer operating systems and related software, computer networks, any other computerized or electronic equipment or components, or any other products, and any services, data or functions that directly or indirectly use or rely upon in any form or manner any of the foregoing items, due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond dates, and/or all date related failure(s) or date sensitive calculations which result in failure(s) and

(B)    this applies as well to any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you, or by an independent or sub-contractor, to determine, rectify or test for any potential or actual problems in regard to the foregoing.

This exclusion does not apply to "bodily injury" occurring on the premises insured hereunder owned by or rented to you.

AUTHORIZED REPRESENTATIVE          DATE

M/E-064 (4/99)

# ESSEX INSURANCE COMPANY

**MARKEL**

## HABITATIONAL ENDORSEMENT

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| | | |

### THIS ENDORSEMENT CHANGES THE POLICY.

The coverage under this policy does not apply to  "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising:

1.  Out of swimming pools, unless specifically classified and shown on declarations or schedule and

    (a)  having a Red Cross or similarly qualified/certified lifeguard on duty at all times during hours open for use, or

    (b)  if no lifeguard, signs must be posted and clearly visible stating "No Lifeguard on Duty – Swim At Own Risk," as well as "No One Under Age 14 Permitted Without Adult Supervision," as well as all other rules; flotation ropes must be installed between "deep" and "shallow" end of pool; no alcoholic beverages permitted in pool area; no beverage or other glass containers allowed in pool area; and

    (c)  if fenced, due to not having self-closing gates which are not kept locked when not in use.

2.  Out of or caused by an animal, regardless whether owned by you, in your care, or on your premises.

3.  Out of allegations of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.  Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision.  Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property.  The sentence "This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property" is deleted from the Commercial General Liability Coverage Form, Section I, Item 2., Exclusions, a.

_____/

Authorized Representative        Date

M/E-091(2/01)



# ESSEX INSURANCE COMPANY

## HABITATIONAL/COMMERCIAL WATER DAMAGE EXCLUSION

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| | | |

**THIS ENDORSEMENT CHANGES THE POLICY.**

The coverage under this policy does not apply to "property damage" to buildings or property therein arising from the following:

    1.  Discharge, leakage, backup or overflow from sewers, mains, drains, ditches or streams, pipes, plumbing, heating, refrigerating or air conditioning systems, standpipes, appliances, or automatic sprinkler systems; or

    2.  Rain or snow admitted directly to the building interior through defective roofs, leaders or spouting, or open or defective doors, windows, skylights, transoms or ventilators;

but this exclusion does not apply to "property damage" due to fire.

 

 

_____/

Authorized Representative     Date

M/E-091-1(4/99)

 **MARKEL**

**ЭЭEX INSURANCE COMPAN**

## MINIMUM EARNED PREMIUM ENDORSEMENT

\* *Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CH1121 | 07/10/2002 | RAMADA LIMITED CORP., MDRB CORP. T/A |

**THIS ENDORSEMENT CHANGES THE POLICY.**

If this insurance policy is cancelled at your request, there will be a Minimum Earned Premium retained by us of $ 2,512      or      25      %(per cent) of the premium, whichever is the greater. Cancellation for nonpayment of premium is considered a request by the first Named Insured for cancellation of this policy.

_____  /_____
AUTHORIZED REPRESENTATIVE           DATE



# ESSEX INSURANCE COMPANY

## RESTAURANT, BAR, TAVERN, NIGHT CLUBS, FRATERNAL AND SOCIAL CLUBS ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO.<br>3CH1121 | *EFFECTIVE DATE OF ENDORSEMENT<br>07/10/2002 | *ISSUED TO<br>RAMADA LIMITED CORP.,<br>MDRB CORP. T/A |
| --- | --- | --- |

**THIS ENDORSEMENT CHANGES THE POLICY.**

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of:

1. Injury to any entertainer, stage hand, crew, independent contractor, or spectator, patron or customer who participates in or is a part of any athletic event, demonstration, show, competition or contest; or

2. To property or equipment of any one in 1. above; or

3. Any mechanical ride, slides, boat docks, piers, or swimming pools; or

4. Assault and/or Battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any insured, Insured's employees, patrons or any other person. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property. The sentence "This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property" is deleted from the Commercial General Liability Coverage Form, Section I, Item 2., Exclusions, a.

5. Liquor Liability. Liquor Liability 2.c. Exclusion, Commercial General Liability Coverage Form, Section I-Coverage, is replaced by the following and applies throughout this policy:

   The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of:

   a.) Causing or contributing to the intoxication of any person; and/or

   b.) Furnishing alcoholic beverages to anyone under legal drinking age or under the influence of alcohol; and/or

   c.) Any statute, ordinance or regulation relating to sales, gift, distribution or use of alcoholic beverages; and/or

   d.) Any act or omission by any insured, any employee of any insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol; or

6. Any charges or allegations of negligent hiring, employment, training, placement or supervision, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same covered in this policy.

M/E-189 (9/00)

AUTHORIZED REPRESENTATIVE    DATE

/08/12/2002

COMMERCIAL GENERAL LIABILITY
CG 21 69 01 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War Or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

**(2)** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(a)** Physical injury that involves a substantial risk of death; or

**(b)** Protracted and obvious physical disfigurement; or

**(c)** Protracted loss of or impairment of the function of a bodily member or organ; or

**(3)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(4)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

© ISO Properties, Inc., 2001

**(5)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2)**, immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**B.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**War Or Terrorism**

"Personal and advertising injury" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

**(2)** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(a)** Physical injury that involves a substantial risk of death; or

**(b)** Protracted and obvious physical disfigurement; or

**(c)** Protracted loss of or impairment of the function of a bodily member or organ; or

**(3)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(4)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

    © ISO Properties, Inc., 2001    CG 21 69 01 02    □

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2),** immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply.

**D.** The following definition is added to the **Definitions** Section:

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.